IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTY CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-03417-MDH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq*. Plaintiff has exhausted her administrative remedies and the matter is ripe for judicial review.[1] After a careful review of the files and records, the Court finds the ALJ's opinion is supported by substantial evidence in the record as a whole. The decision of the Commissioner is **AFFIRMED**.

## BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, this case involves a 41-year old woman who applied for SSI benefits due to illiteracy, back and leg problems, depression, and anxiety. The ALJ found that, during the relevant time period, Plaintiff suffered from severe impairments including: asthma; chronic pain syndrome; musculoskeletal disorders described as minimal thoracic scoliosis and spondylosis and history of lumbar fissure with protrusion at L4-5;

---

[1] Plaintiff filed an application for SSI on January 18, 2012, alleging disability beginning January 1, 2007. Plaintiff's claim was initially denied on May 10, 2012. Upon Plaintiff's request, a hearing was held before an ALJ on July 8, 2013 and the ALJ issued a decision on July 26, 2013 finding Plaintiff not disabled. Plaintiff appealed the ALJ's decision and the Appeals Counsel denied Plaintiff's request for a review on July 30, 2014.

1

and mental disorders described as major depressive disorder, post-traumatic stress disorder, and history of mild mental retardation or borderline intellectual functioning. The ALJ determined that Plaintiff was not disabled, finding she retained a residual functional capacity ("RFC") to perform light work with certain limitations[2] and could perform both her past relevant work and other jobs that exist in significant numbers in the national economy. Plaintiff now argues the ALJ erred by improperly weighing the medical opinions of record and by rendering an RFC that is not supported by substantial medical evidence.

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two

---

[2] Specifically, the ALJ found Plaintiff could perform light work as defined in 20 C.F.R. 416.967(b) except that:

> she is able to lift and carry 10 pounds frequently and 20 pounds occasionally; she is able to sit for about 6 hours of an 8 hour workday; she is able to stand and/or walk for about 6 hours of an 8 hour workday; she is limited to occasional climbing of ladders, ropes, and scaffolds; she is limited to occasional stooping, kneeling, crouching, and crawling; she must avoid even moderate exposure to hazards (i.e. heights, machinery, dangerous equipment, and so forth); she is able to perform simple, repetitive tasks; she is limited to no more than occasional interaction with supervisors, coworkers, and the public; she is precluded from work that requires reading and/or writing; she is limited to moderate exposure to fumes, odors, gases (and so forth).

Tr. 65.

inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## DISCUSSION

Plaintiff's arguments on appeal surround the ALJ's findings with respect to work-related limitations posed by Plaintiff's mental impairment(s). Plaintiff argues the ALJ erred by discounting the medical opinions of Plaintiff's treating psychologist, her treating psychiatric nurse practitioner, and an examining psychologist. Plaintiff further argues the RFC is not supported by substantial medical evidence in the record as a whole. Upon review, the Court finds the ALJ applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence in the record as a whole.

### 1. The ALJ did not err in weighing medical opinions

In determining whether a claimant is disabled, the ALJ considers the medical opinions in the case together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). The weight to give to a particular medical opinion is determined by various factors such as the examining relationship, the nature and length of the treatment relationship, the support provided for the opinion, the opinion's consistency with the record as a whole, the area of specialization of the medical source, and other factors that tend to support or contradict the opinion. *Id.* at § 416.927(c). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ must evaluate every medical opinion in the record but medical opinions on issues such as disability and RFC "are not medical opinions" and "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R § 416.927(d).

3

Case 6:14-cv-03417-MDH   Document 14   Filed 11/30/15   Page 3 of 12

**A. Dr. Robison – Treating Psychologist**

Plaintiff began seeing Dr. Robison, a licensed psychologist, in March of 2013, upon referral from Plaintiff's primary care physician. Plaintiff was referred to Dr. Robison for psychotherapy to assist Plaintiff with depression, anxiety, and medication management. Dr. Robison met with Plaintiff on eight occasions over a three month period prior to completing his Medical Source Statement (MSS) and Depression Questionnaire (Ex. 14F, 15F). Dr. Robison completed the forms on Plaintiff's behalf on June 10, 2013 and opined that Plaintiff has numerous marked and extreme limitations in various functional areas.[3] The ALJ gave Dr. Robison's medical opinion "little weight" finding "his opinions are based on only a three-month treatment history" and "he reported very few, if any, objective signs or observations of mental symptoms that would support his opinion." The ALJ noted that the target date for completing Plaintiff's therapy goals was five months after Dr. Robison began treating Plaintiff and "this strongly suggests that Dr. Robison thinks the claimant's symptoms and mental functioning will improve in less than 12 months, which appears to be inconsistent with his opinion." Finally, the ALJ found Dr. Robison "lacked necessary information to consider the effect of substance use on [Plaintiff's] mental functioning."

The Eighth Circuit recently described the appropriate weight to afford to opinions of treating physicians:

---

[3] Specifically, Dr. Robison opined that Plaintiff has moderate limitations in her ability to understand, remember, and carry out short and simple instructions, perform activities in a schedule, and sustain an ordinary routine without special supervision. Dr. Robison opined that Plaintiff has marked limitations in her ability to remember locations and work-like procedures, ask simple questions or request assistance, accept instruction and respond appropriately, maintain socially appropriate behavior, be aware of normal hazards, and set realistic goals or make independent plans. Dr. Robison opined that Plaintiff is extremely limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration, work in coordination or proximity to others, make simple work-related decisions, complete a workday without interruption from psychotic symptoms, interact appropriately with the general public, get along with co-workers without distracting or exhibiting behavioral extremes, responding appropriately to changes in work settings, and travelling to unfamiliar places or using public transportation.

4

> The ALJ must give "controlling weight" to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir. 2007) (internal quotation marks and emphases omitted). *See* S.S.R. 96–2p, Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) ("Not inconsistent ... is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.").
>
> "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). It may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). The ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."

*Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).

Here, the ALJ's decision to grant the opinion of Dr. Robison "little weight" was within the available zone of choice. The ALJ discounted Dr. Robison's form opinions because they provided only conclusory statements conveying extreme limitations that were not supported by Dr. Robison's treatment notes or other objective findings. The ALJ was correct that Dr. Robison's treatment notes "reported very few, if any, objective signs or observations of mental symptoms that would support his opinion."[4] The Eighth Circuit has affirmed an ALJ's decision

---

[4] Dr. Robison's treatment notes detail therapy sessions that consisted of Plaintiff discussing external stressors in her life with Dr. Robinson – i.e. conflicts between Plaintiff and her primary care physician regarding pain medication, Plaintiff's concerns about her dog's health, Plaintiff's frustrations with her disability claim, Plaintiff's relationship with her daughters, and Plaintiff's anxiety while shopping in Walmart. Dr. Robinson's notes from these sessions contain no objective testing or observations by Dr. Robison other than noting Plaintiff was "on time" and "engaged and active in this session" and "forthcoming with details about her life" and "responsive to feedback and open to critique." Tr. 496, 498, 500, 505-06, 507, 508-09, 635, 637. Only the initial clinical assessment form completed by Dr. Robison included any observation or impression of Plaintiff's condition and noted that Plaintiff exhibited "medication seeking behaviors" and "it is likely that the client will discontinue psychotherapy following a successful referral to psychiatry." Tr. 517. Dr. Robison's check-mark MSS form contains no further explanation or elaboration related to his opinion that Plaintiff suffers numerous marked and extreme limitations. Dr. Robinson noted on his Depression Questionnaire that Plaintiff has "significant" memory impairment, an inability to read and write, "significant" anxiety, and a "short temper making her volatile around others." Tr. 530.

5

to discount a treating physician's opinion where the opinion is conclusory only and not supported by treatment notes or objective findings. *See, e.g., Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) (ALJ did not err in discounting opinion of treating physician where opinion was conclusory in nature, contained significant limitations not reflected in treatment notes/medical records, and was inconsistent with daily activities); *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (ALJ did not err in discounting opinions of treating physician where cited limitations were not supported by clinical test results, observations, or other objective findings, were inconsistent with physician's treatment notes, and were based on subjective complaints rather than objective findings); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ did not err in discounting opinion of treating physician where limitations cited in MSS were not mentioned in numerous treatment records or supported by objective testing and where treatment notes suggested symptoms were "mild" and generally controlled by medication).[5]

The Court notes that, although the ALJ gave the opinion of Dr. Robinson little weight, the ALJ did take into account certain functional limitations cited by Dr. Robison. For example, the ALJ rendered an RFC that limited Plaintiff to simple, repetitive work involving no reading or writing and no more than occasional interaction with supervisors, coworkers, and the public. The Court cannot say the ALJ erred by discounting Dr. Robison's opinion to the extent it was inconsistent with the assessed RFC.

---

[5] Plaintiff cites to *Reed v. Barnhart*, 399 F.3d 917, 922 (8th Cir. 2005) to support her argument that the ALJ erred in discounting Dr. Robison's opinion. In *Reed*, the ALJ discounted a treating physician's opinion because the physician failed to provide explanation for the limitations associated with the plaintiff's anxiety, PTSD, depression, and migraines, and revealed little in the way of objective or structured testing. *Id.* at 921-22. On appeal, the Eighth Circuit reversed and noted that "[b]esides Dr. Dimalanta's reliance on his knowledge of Reed's diagnoses with these conditions . . . , Reed's success with various medications that he prescribed, the results of the therapy he gave her, his documentation of her history, and his observations during multiple face-to-face visits with her, it is unclear what other tests should have been relied upon by Dr. Dimalanta so as to render his conclusions credible." *Id.* at 922. The Eighth Circuit further found that "Dr. Dimalanta's treatment notes are consistent with his conclusions on the MSS." *Id.* Here, by contrast, Dr. Robison did not prescribe or manage Plaintiff's medications, he did not indicate any homework or results of Plaintiff's psychotherapy, his records do not contain any independent review of Plaintiff's medical history, and his treatment notes contain no observations that would support the extreme limitations cited.

**B. Linda Lazzari – Nurse Practitioner**

Linda Lazzari is a nurse practitioner who worked at the same office as Dr. Robison and who met with Plaintiff for medication management. The record shows that Nurse Lazzari worked under a psychiatrist, Dr. Thomas,[6] and met with Plaintiff on three occasions prior to completing an MSS form on Plaintiff's behalf. The limitations contained in Nurse Lazzari's MSS form mirror exactly the limitations cited in Dr. Robison's MSS form. *See supra* at n. 3. The ALJ gave Nurse Lazzari's opinion "little weight" finding that she was not an acceptable medical source to provide a medical opinion, that her opinion was based on a limited treatment history, and that her treatment notes contained few objective signs and observations of mental symptoms.

A nurse practitioner is not considered an "acceptable medical source" under social security regulations. *See* 20 C.F.R. § 416.913(d). Accordingly, the ALJ correctly noted that a nurse practitioner cannot render a "medical opinion" as that term is defined in the social security regulations, *see id.* at § 416.927(a)(2), and a nurse practitioner's opinion is not entitled to treating source status or controlling weight. Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45593, 44594 (Aug. 9, 2006); *Lacroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006). A nurse practitioner's opinion is entitled to consideration, however, as it may provide evidence of the severity of a claimant's impairment(s) and how the impairment(s) affects the claimant's ability to work. *See Lacroix*, 465 F.3d at 886-87; *see also* 20 C.F.R. § 416.913(d). The Social Security Administration has stated that opinions from medical sources other than "acceptable medical sources" should be evaluated using the factors listed in 20 C.F.R § 416.927(d). *See* SSR 06-03p, 71 Fed. Reg. at 45595.

---

[6] The record does not reflect that Dr. Thomas ever met with Plaintiff. Dr. Thomas did not sign any MSS form.

Here, the ALJ erred by referring to Nurse Lazzari's opinion as a "lay opinion" but the ALJ otherwise assessed Nurse Lazzari's opinion under the relevant factors. The ALJ gave Nurse Lazzari's opinion "little" weight in light of her limited treatment history with Plaintiff and the fact that she reported "very few" objective signs and observations of mental symptoms in her treatment notes to support the extreme limitations cited. These factors are appropriate reasons to give less weight to Nurse Lazzari's opinion, *see* 20 C.F.R. § 416.927(c)(2), (3), and the Court finds the ALJ's decision to give little weight to Nurse Lazzari's opinion was within the available zone of choice. *See generally Lacroix*, 465 F.3d at 887 (noting that the ALJ has greater discretion to consider inconsistencies in the record with regard to "other medical evidence" such as the opinion of a nurse practitioner).[7] Accordingly the ALJ did not err in giving limited weight to the opinion of Nurse Lazzari to the extent it was inconsistent with the RFC rendered.

## C. Dr. Hollis – Examining Physician

Plaintiff met with Dr. Hollis on April 25, 2012 for a consultative psychological examination in connection with her application for disability. Dr. Hollis diagnosed Plaintiff with severe recurrent major depressive disorder with psychotic features, mild post-traumatic stress disorder, and mild mental retardation. She opined that Plaintiff can remember simple instructions, may be able to do some repetitive work but would require extra supervision, can interact appropriately with the public, is limited in her ability to adapt to changes in the work environment due to limited intellectual functioning, and is unable to responsibly manage finances. The ALJ gave "little weight" to the opinion of Dr. Hollis noting that Plaintiff made

---

[7] On April 12, 2013, Nurse Lazzari noted that Plaintiff behaved anxiously and was "somewhat restless and tearful at times" but was cooperative, oriented, spoke in a normal and non-pressured manner, exhibited linear and goal-directed thought processes, and showed good insight and judgment. Tr. 503. On May 31, 2013, Nurse Lazzari noted Plaintiff behaved in a more relaxed manner, was somewhat anxious and tense, had a cooperative attitude, spoke in a normal and non-pressured manner, and displayed good insight and judgment. Tr. 494. On June 28, 2013, Nurse Lazzari noted Plaintiff behaved "mostly relaxed" with a calm and sedated-like affect and somewhat slow speech but displayed a euthymic mood and good insight and judgment. Tr. 633-34.

8

Case 6:14-cv-03417-MDH   Document 14   Filed 11/30/15   Page 8 of 12

inconsistent statements during the course of her examination and finding Dr. Hollis failed to adequately address inconsistencies between Plaintiff's current and earlier performances on mental status examinations. The ALJ found Plaintiff's "inconsistent performance on mental status examinations suggests that the claimant may have been attempting to portray herself as more limited to Dr. Hollis in order to obtain a favorable disability decision." Tr. 68.

Upon review, the ALJ did not err in giving less weight to the opinion of Dr. Hollis. The ALJ noted inconsistencies in Plaintiff's performance on Dr. Hollis' psychological examination and the ALJ found such internal and external inconsistencies were inadequately explained by Dr. Hollis.[8] The ALJ ultimately found the opinions of the state agency psychological consultant and Dr. Anderson more consistent with the record as a whole with regard to Plaintiff's limitations related to concentration, persistence, and pace. *See* Tr. 64. Both consistency and supportability are appropriate factors to consider in weighing medical opinions. 20 C.F.R. § 416.927(c)(3), (4). Accordingly, the Court finds the ALJ did not err in discounting Dr. Hollis' opinion to the extent it is inconsistent with Plaintiff's RFC.

### 2. The ALJ's RFC assessment is supported by substantial evidence in the record as a whole.

Plaintiff argues the RFC is not supported by substantial evidence in the record as a whole because the ALJ did not rely on sufficient medical evidence in determining Plaintiff's ability to function in the workplace. Plaintiff argues the ALJ improperly dismissed the opinions of all

---

[8] The ALJ noted that Plaintiff stated during her examination that she could not recall the names of any of her medications but later referenced the name of her pain medication without difficulty. Tr. 71. The ALJ noted that Dr. Hollis relied on Dr. Anderson's 2005 IQ test score (Full Score = 64) and did not even mention Dr. Shifrin's 2012 IQ test score rendered one month prior (Full Score = 77). *See* Tr. 71. The ALJ noted that during Dr. Hollis' examination Plaintiff remembered only 1/3 items after a five minute delay but then during a March 2013 examination Plaintiff remembered 3/3 items after a five minute delay; and that during Dr. Anderson's examination, Plaintiff recalled seven digits forward but during Dr. Hollis' examination Plaintiff had difficulty doing so. Tr. 68, 71.

9

medical professionals except Dr. Anderson and that the objective medical findings show greater restrictions are necessary than those found by Dr. Anderson.

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). Because RFC is a medical question, it "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). While the ALJ must consider at least some supporting evidence from a medical professional in assessing a claimant's workplace limitations, *see Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). RFC is ultimately an administrative determination reserved to the Commissioner based on all of the relevant medical and other evidence. *Cox*, 495 F.3d at 619. The Eighth Circuit has affirmed RFC assessments based upon the ALJ's independent review of the medical evidence in light of the other evidence in the record as a whole. *See, e.g.*, *id.* at 619-20; *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002); *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000); *Anderson v. Shalala*, 51 F.3d 777, 779-80 (8th Cir. 1995).

Here, the ALJ did not err in assessing Plaintiff's RFC. The ALJ thoroughly reviewed the opinion evidence, Plaintiff's medical records, self-reports, and testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

10

limiting effects of these symptoms are not entirely credible[.]" The ALJ first noted that Plaintiff never sought more than minimal mental health treatment until March 2013, which is inconsistent with her alleged onset date, which suggests that she may have sought treatment to generate records for disability rather than because of her mental symptoms, and which suggests there is a possibility that Plaintiff's mental symptoms will improve with treatment. The ALJ next systematically discussed Plaintiff's medical records and limitations related to her intellectual functioning, concentration and memory, depression, and anxiety, the ALJ cited inconsistencies in Plaintiff's mental status examinations and tests, and the ALJ explained why she ultimately found Plaintiff's mental symptoms less limiting than alleged. Finally, and largely important in considering the effects of Plaintiff's mental impairments, the ALJ found Plaintiff non-credible in light of her medically documented drug-seeking behaviors,[9] her daily activities, her poor work history, her inconsistent reports of substance abuse to physicians and psychologists, her behavior at the hearing, and the fact that her testimony regarding functional limitations "was so extreme as to seem implausible, particularly when considered with the relatively weak medical evidence."

In sum, the ALJ appropriately considered all the relevant medical and other evidence is assessing Plaintiff's RFC and found Plaintiff retained the capacity to perform simple, repetitive tasks that do not involve reading or writing and that do not involve more than occasional interaction with others. The Court, after considering both the evidence that supports the Commissioner's decision and the evidence that detracts from it, finds there is sufficient evidence

---

[9] Plaintiff's primary care physician, Dr. Durfey, noted that Plaintiff was concerned when he told Plaintiff he wanted to discontinue certain of Plaintiff's medications; that Plaintiff claimed "all her pain and anxiety is gone when she takes these medications"; that Plaintiff threatened to go to urgent care for an Ativan refill if he did not give it to her; and that "patient is not happy with this plan and is focused on obtaining opioid pain medications." Notes from Plaintiff's sessions with Dr. Robison reveal Plaintiff began seeing Dr. Robison because, in her own words, "I need my medications"; that Dr. Robison noted Plaintiff's medication seeking behaviors; that Plaintiff repeatedly discussed her conflict with Dr. Durfey regarding obtaining certain medications during her therapy sessions; and that Plaintiff changed physicians because Dr. Durfey refused to prescribe her certain medications. Notes from Plaintiff's medication management with Nurse Lazzari further reveal that Plaintiff requested an increase in her Ativan dose on every occasion in the record except during her first meeting. *See* Tr. 493, 630, 634.

11

to allow a reasonable person to find adequate support for the Commissioner's conclusions. Accordingly, there is no basis to reverse the ALJ's RFC assessment. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) ("That the reviewing court would come to a different conclusion is not a sufficient basis for reversal.").

## CONCLUSION

For the reasons discussed above, there is substantial evidence on the record as a whole to support the ALJ's disability determination. Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: November 30, 2015                         */s/ Douglas Harpool*
                                                 **DOUGLAS HARPOOL**
                                                 **UNITED STATES DISTRICT JUDGE**